THOMAS C. STRETCH & another vs. WALTER H. TIMILTY
& others
(and three companion cases [1]).

Suffolk.    March 4, 1941. — May 29, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Boston*, Police commissioner. *Police. Equity Jurisdiction*, Over public
officer.

Equity was without jurisdiction to control or direct the police commis-
sioner of Boston with respect to the method of use of his discretion in
preventing police officers' soliciting private business for the benefit of
the commissioner's brother and to the detriment of the plaintiff.

FOUR BILLS IN EQUITY, filed in the Superior Court in
February and May, 1940.

The prayers of the bills, so far as they relate to the defend-
ant Joseph F. Timilty, were in substance as follows: "That
the defendant Joseph F. Timilty, as police commissioner of
the city of Boston, be enjoined and ordered to take all neces-
sary, proper and reasonable steps to forbid and prevent any
and all members of the Boston police department from di-
rectly or indirectly aiding or coöperating with the [other]
defendants . . . in the solicitation of business for said
corporate defendant, and particularly solicitation of the
customers of the plaintiff"; and that he be so enjoined
"forthwith"; and that he, as such police commissioner,
"be enjoined and ordered to take all necessary, proper
and reasonable action to forbid and prevent any and all
members of the police department of the city of Boston
from engaging in or continuing the unfair competition and
engaging in or persisting in the unlawful practices described
in the bill"; and that he be so enjoined "forthwith."

---

[1] The companion cases were brought against the same defendants by
Bell Linen Service, Inc., John F. Fitzgibbons, and Harrison W. Pearl, re-
spectively.

The suits were heard by *Buttrick,* J.

*G. R. Farnum,* (*R. N. Bail* with him,) for the plaintiffs.

*F. T. Leahy,* for the defendant Joseph F. Timilty.

QUA, J.   These four bills in equity in substantially the same form are brought by parties engaged in the business of "furnishing laundry service in aprons, towels, coats and other linen" to restaurants, bars and other establishments against Elk Laundry Inc., a corporation engaged in a similar business, Walter H. Timilty, now its general manager but formerly the individual proprietor of the business now conducted by the corporation, and Joseph F. Timilty, who is a brother of Walter H. Timilty, and who is police commissioner of the city of Boston.

The gist of the complaints against the defendants Elk Laundry Inc. and Walter H. Timilty is that they have availed themselves of the official position of the defendant Joseph F. Timilty and of his relation to the defendant Walter H. Timilty to compete unfairly with the plaintiffs and have injured the plaintiffs' business by enlisting members, including high officers, of the Boston police department in the scheme of soliciting business for the defendants Walter H. Timilty and Elk Laundry Inc., from "persons or establishments the conduct of whose business was subject to police observation, inspection or supervision by reason of holding liquor, victuallers, amusement or other licenses or permits, or who were otherwise dependent upon, or might reasonably deem themselves dependent upon, the good will or protection of the police," and that as a result of police solicitation many customers were intimidated, coerced, and otherwise induced to discontinue dealing with the plaintiffs and to transfer their patronage to said defendants.

Inasmuch as the Superior Court granted relief against the defendants Walter H. Timilty and Elk Laundry Inc., and referred the cases to a master to assess damages, we may assume that the scheme existed and that it was to some extent at least put into operation. Since those defendants have not appealed, no question of law involved in the action of the court against them is before us. Nor is it necessary to comment upon the morality and the effect

upon the public confidence in the police of a scheme of this kind. The scheme speaks for itself. The only question before us arises upon the plaintiffs' appeals from decrees dismissing the bills as to the defendant Joseph F. Timilty, the police commissioner, and the question is whether the cases disclose any ground upon which he can be held.

The only allegations in the bills involving the defendant police commissioner are in substance that the Governor of the Commonwealth called his attention to complaints that had been made to the Governor by the plaintiffs and other persons engaged in a similar business; that the State police started an investigation; that, "as a consequence, said unlawful solicitation of the trade" was for the time being wholly or partly suspended; that the commissioner has on divers occasions been informed that members of the department have solicited and have coöperated in the solicitation of business for his brother, the defendant Walter H. Timilty, and has reason to believe that they are still doing so and "has neglected and failed to take any action, or any adequate and sufficient action, to put a permanent stop to said unfair competition and unlawful practices." The only specific findings by the judge affecting the defendant commissioner are that he had no knowledge of such solicitation by the police until the Governor conferred with him at the State House; that the commissioner immediately called in the superintendent of police and directed him to investigate the matter and not to interfere with the investigation by the State police; and that the superintendent, having detailed some of his subordinates to the task, reported to the commissioner "that he found nothing to warrant any such complaint."

The bills do not charge the commissioner with having joined in the scheme or with having aided or assisted in carrying it out in any way whatever, or with bad faith. At most they charge that he did not take adequate measures to stop it. The findings do not even go as far as that. They do not show affirmatively that the commissioner was remiss in any respect. Possibly it could be inferred from the decree against the other defendants that the commissioner

had not, when the bills were filed, actually succeeded in stopping the scheme. At all events the plaintiffs' cases against the commissioner do not in any possible view go further than to show that the commissioner, being in control of the police department and learning of this evil, did not then take sufficient steps to uproot it. Reduced to their lowest terms these cases are not predicated upon any wrongful conduct of the commissioner toward the plaintiffs. They are attempts to induce the court to give orders to the commissioner as to what steps he must take to maintain an efficient and honest police department, to eradicate an evil which has developed in that department, and to enforce discipline among its members. If the court enters upon this undertaking it may be asked in later stages, upon contempt proceedings, to supervise the action of the commissioner and to determine whether he has done all that he should have done and what, if any, additional measures he should take. The essential nature of the plaintiffs' contention is not changed by the fact that a beneficiary of this reprehensible plan to enlist the peculiar influence of the police in favor of a particular private business happens to have been the brother of the commissioner.

The proposition that the court should regulate in the manner urged upon us the administration of a city department is, we believe, a novel one. And it is unsound. Obviously the choice as to the means to be employed to correct unfortunate conditions in the department involves the exercise of discretion. It is likely to involve the repeated exercise of discretion. It involves much more than a purely ministerial act which a private citizen has the right to compel a public officer to perform in his behalf. The necessary discretion is committed by statute to the police commissioner and could not be committed to the courts. Article 30 of the Declaration of Rights (Part the First of the Constitution of the Commonwealth). *Opinion of the Justices*, 300 Mass. 596. We need cite only a few of the many cases in which it has been held that a court cannot in this way, through the medium of a bill in equity or otherwise, control the method of performance of discre-

tionary duties by an executive or administrative officer. *Alger* v. *Seaver*, 138 Mass. 331. *Moneyweight Scale Co.* v. *McBride*, 199 Mass. 503, 505. *McLean* v. *Mayor of Holyoke*, 216 Mass. 62, 64. *Liberty Mutual Ins. Co.* v. *Acting Commissioner of Insurance*, 265 Mass. 23, 29. *Burke* ·v. *Metropolitan District Commission*, 262 Mass. 70, 75. *Hayes* v. *Hurley*, 292 Mass. 109, 113. *Mullholland* v. *State Racing Commission*, 295 Mass. 286, 291, 292. See *Downey* v. *School Committee of Lowell*, 305 Mass. 329, 332.

The several appeals from orders for decrees are dismissed. *Graustein* v. *Dolan*, 282 Mass. 579, 583. In each case the final decree dismissing the bill as to the police commissioner is affirmed with costs.

*Ordered accordingly.*