PAUL SARDELLA CONSTRUCTION CO., INC. *vs.* BRAINTREE
HOUSING AUTHORITY & others.[1]

Norfolk.    April 15, 1975. — June 9, 1975.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Contract,* For public works, Bidding for contract, Subcontract.  *Damages,* For failure to award public works contract.

A housing authority's revocation of an award to a general contractor, on the grounds that a subcontractor listed in the general bid subsequently withdrew its subbid and that the substitution of another subbidder resulted in the bid price of the contractor becoming greater than that of another general bidder, was erroneous where the authority mistakenly relied on the provisions of G. L. c. 149, § 44I(2), rather than applying § 44I(3) which provides that, when there is a failure by the selected subbidder to execute a subcontract, another subbidder should be selected and the general contract price adjusted by the difference in the amount of the two subbids. [329-331]

The proper measure of damages for the failure of a public contracting authority acting in good faith to give fair consideration to a submitted bid in accordance with the provisions of G. L. c. 149, the competitive bidding statute, was the reasonable cost of preparing the bid. [331-335]

A general bidder which had a contract award erroneously revoked by a public housing authority was not entitled to recover damages from the bidder which was subsequently awarded the contract where there was no evidence that it had induced the authority to rescind the original award. [335]

A subbidder which prior to executing a subcontract with the general bidder withdrew its subbid because it was based on a clerical error, causing a public housing authority erroneously to revoke its award of the general contract, was not liable to the general bidder for damages resulting from the revocation. [335-336]

BILL IN EQUITY filed in the Superior Court on February 9, 1972.

The suit was reported by *Cross, J.*

*George Waldstein* for the plaintiff.

*Joseph P. Hurley (Theodore A. Glynn, Jr.* with him) for Braintree Housing Authority.

---

[1] Fred J. Findlen and Sons and Daniel Mazza Co., Inc.

HALE, C.J.    This bill for declaratory relief comes to us by way of a report by the Superior Court pursuant to Mass.R.Civ.P. 64, 365 Mass. 831 (1974). The case was submitted to the trial judge on a case stated.[2] The judge made rulings of law and reported those rulings to us for a determination of their correctness. We summarize the facts.

Sometime prior to September 15, 1971, the Braintree Housing Authority (Authority) invited bids pursuant to the provisions of the competitive bidding statute (G. L. c. 149, §§ 44A-44L) for the construction of a State-aided project of housing for the elderly. Thereafter, the bids of the subcontractors were opened, with the defendant Daniel Mazza Co., Inc. (Mazza) found to be the lowest responsible and eligible bidder for the plumbing subcontract. Mazza's subbid was unrestricted with respect to its willingness to enter into a subcontract with any general contractor. On September 15, 1971, the bids of the general contractors were opened, with the plaintiff Paul Sardella Construction Co., Inc. (Sardella) found to be the lowest responsible and eligible general bidder. Sardella listed Mazza as its plumbing subcontractor, as did the second lowest bidder. The defendant Fred J. Findlen and Sons (Findlen), the third lowest bidder, listed Duggan Construction Co., Inc. as its plumbing subcontractor.

On September 29, 1971, Mazza wired the Authority, purporting to withdraw its subbid on the basis of an alleged clerical error, and confirmed that action by a letter sent the following day.

On October 20, 1971, the Authority voted to award the contract to Sardella as the lowest responsible and eligible general bidder. See G. L. c. 149, § 44A. The award was subject to the approval of the Department of Community Affairs. See G. L. c. 121B, § 31. On October 26, 1971, Sardella notified Mazza that it had been selected by the Authority

---

[2] No facts relating to damages were stipulated, it having been agreed, with the approval of the court, to determine the issue of liability before considering the question of damages.

as the subcontractor and on November 15 sent Mazza proper subcontracts for its signature.

Mazza failed to execute the subcontracts within five days (G. L. c. 149, § 44I [3]) and returned the unexecuted contracts to Sardella on November 22, 1971, notifying Sardella and the Authority of its refusal to execute "due to a bona fide clerical error" in its bid.

Thereafter, the Authority reviewed all of the other eligible and responsible plumbing subbids and determined that if any one of those bids was to be substituted in place of Mazza's, Findlen's bid would be the lowest general bid. The Authority then voted on November 24, 1971, to rescind its award of the general contract to Sardella and to award that contract to Findlen. Sardella was not invited to nor was it represented at the meeting at which such votes were taken. A notice of the decision was mailed to Sardella, and it immediately lodged a protest with the Department of Labor and Industries, which conducted an investigation and held a conference on December 7, 1971. See G. L. c. 149, § 44K. On January 7, 1972, that Department rendered its decision upholding the action of the Authority in awarding the general contract to Findlen.

At a meeting held on December 15, 1971, the Authority found that "a bona fide clerical error had been made by Mazza" and voted to return Mazza's deposit (which it subsequently did). See G. L. c. 149, §44B (3). Sardella was not notified of that meeting.

On January 20, 1972, the Authority and Findlen executed a contract for the project. That contract was approved by the Department of Community Affairs. Findlen proceeded to build the project, substantially completing it by February, 1973. Findlen has been paid the contract price, with the exception of a small amount held back pending the completion of certain seeding operations.

Both Sardella and Findlen were eligible and responsible bidders at all material times.

The present bill for declaratory relief was filed on February 9, 1972. By this bill Sardella seeks a binding declaration of the rights, duties, status, and obligations of the

parties, and that the damages caused Sardella by each of the defendants be determined and awarded to it. The prayers of the bill also include requests for temporary restraining orders and preliminary injunctions against the Authority and Findlen, enjoining them from doing any act in furtherance of the contract, and for an order directing the Authority to award the contract to Sardella and to rescind the award to Findlen.[3] Nothing in the record or in the docket entries indicates that any move was made in the Superior Court for the issuance of any restraining order or injunction.

The judge ruled that: (1) the Authority is liable in damages to Sardella for unlawfully rescinding its award to Sardella; (2) Findlen is not liable to Sardella for accepting and performing a contract which should have been awarded to Sardella; and (3) Mazza is not liable to Sardella for refusing to execute a subcontract. We are asked to determine the correctness of these rulings.

1. In making its determination that Findlen became the lowest responsible and eligible bidder and should thus receive the contract, the Authority relied on the provisions of G. L. c. 149, § 44I(2).[4] In so deciding, it in effect applied

---

[3] There is no question that the plaintiff has standing to challenge action of an awarding authority which is asserted to be in violation of G. L. c. 149, §§ 44A-44L. See *Quincy Ornamental Iron Works, Inc.* v. *Findlen,* 353 Mass. 85, 87 (1967); *Interstate Engr. Corp.* v. *Fitchburg,* 367 Mass. 751, 755, n. 6 (1975).

[4] Section 44I(2) reads: "If, after the selection of the lowest responsible and eligible general bidder, it be decided to consider sub-bidders other than the ones named by such general bidder in his general bid, the awarding authority and such general bidder shall *jointly consider* all filed sub-bids not rejected under section forty-four H. Any *agreement* to substitute a sub-bid for the one named in the selected general bid shall result in an adjustment of the general bid price by the difference between the amount of the sub-bid originally named and the amount of the sub-bid substituted therefor. If by such substitutions the total adjusted general bid price of the general bidder first selected becomes greater than the original general bid price of the second lowest responsible and eligible general bidder, then the latter shall be selected and his sub-bidders similarly considered. If, by substitutions as hereinbefore provided, the total adjusted general bid price of the second selected general bidder becomes greater than the total adjusted general

only the last two sentences of the subsection, as there was no joint consideration of subbidders with Sardella and no agreement by Sardella to substitute another subbidder for the one carried in its general bid. Instead, the Authority unilaterally substituted another subbid in place of Mazza's and determined that by reason of such substitution Findlen became the lowest general bidder. It then proceeded to revoke the award to Sardella and to award the contract to Findlen.

We agree with the trial judge that § 44I (3)[5] should have been applied in the circumstances of this case, as that section specifically provides the proper route to follow where, as here, there is a failure by the selected subbidder to execute a subcontract. That subsection mandates that the Authority and the selected general bidder together select another subbidder and adjust the total contract price by the difference between the amount of the latter's bid and that of the defaulting subbidder. Notable is the absence from that subsection of any provision for the selection of

bid price of the general bidder first selected or greater than the original general bid price of the third lowest responsible and eligible general bidder, then the bidder having the lower of these two general bid prices shall be selected; provided, that if the third lowest responsible and eligible general bidder is selected, his sub-bidders shall be similarly considered. The general bidder finally selected by the aforementioned process of substitutions shall be the general bidder to whom the contract shall be awarded" (emphasis supplied).

[5] Section 44I(3) reads, in pertinent part: "If a selected sub-bidder fails within five days, Saturdays, Sundays and legal holidays excluded, after presentation of a subcontract by the general bidder selected as the general contractor, to perform his agreement to execute a subcontract in the form hereinafter set forth with such general bidder, contingent upon the execution of the general contract, and, if requested so to do by such general bidder in the general bid, to furnish a performance and payment bond as stated in his sub-bid in accordance with section forty-four G, such general bidder and the awarding authority shall select, from the other sub-bids duly filed with the awarding authority for such sub-trade and not rejected under section forty-four H, the lowest responsible and eligible sub-bidder at the amount named in his sub-bid as so filed against whose standing and ability the general contractor makes no objection, and the contract price shall be adjusted by the difference between the amount of such sub-bid and the amount of the sub-bid of the delinquent sub-bidder."

another general bidder should the result of the change be to make the previously selected general bidder no longer the lowest bidder. That is in stark contrast to the immediately preceding subparagraph (2), which specifically provides for such a change. The Authority is protected from the impact of the increased price, as the bid deposit of the subbidder is required by § 44B (1) to be payable to it. The bid deposit becomes the property of the Authority as liquidated damages to the extent of the difference between the depositor's subbid and that of the next lowest responsible and eligible subbidder. G. L. c. 149, § 44B (3). Subsection (3) provides, among other things, that in a case of a bona fide clerical error of a substantial nature affecting a low subbidder, its bid deposit should be returned. The occurrence of such an event would result in the loss to the Authority of the protection of the deposit but would not change the status of the lowest general bidder, whose original bid would have to be adjusted in the manner required by § 44I (3).

We conclude that the Authority's action in revoking its acceptance of Sardella's bid was erroneous and that the ruling of the judge that the Authority is liable in damages to Sardella was correct.

We are thus confronted with the difficult and novel question of the proper measure of damages to be awarded a bidder whose award was rescinded in violation of statutory requirements. Sardella contends that the Authority is liable to it for the profit it would have made had the award not been wrongfully rescinded by the Authority. The Authority argues that, as it has the right to reject any and all general bids (G. L. c. 149, § 44D), and as no contract was ever made with Sardella, the latter has no valid theory of recovery against the Authority.[6]

We conclude that Sardella is not entitled to recover anticipated profits as its measure of damages as it never actu-

---

[6] See G. L. c. 121B, § 13, which reads, in pertinent part: "An operating agency [defined in G. L. c. 121B, § 1, as "a housing authority or redevelopment authority"] shall be liable in contract or in tort in the same manner as a private corporation."

ally entered into the contract under which it would have made such profits. See, e.g., *Excavation Construction, Inc.* v. *United States,* 494 F. 2d 1289, 1290 (Ct. Cl. 1974); *Matter of Allen* v. *Eberling,* 24 App. Div. 2d 594 (N.Y. 1965); *William A. Berbusse, Jr. Inc.* v. *North Broward Hospital Dist.* 117 So. 2d 550, 552 (Fla. App. 1960).

This conclusion, however, does not mean that Sardella is left without any remedy for the violation of the competitive bidding statute by the Authority. It has consistently been held that "in matters of substance there must be strict compliance with the requirements of G. L. c. 149 . . .." *Chick's Construction Co. Inc.* v. *Wachusett Regional High Sch. Dist. Sch. Comm.* 343 Mass. 38, 41 (1961). *Interstate Engr. Corp.* v. *Fitchburg,* 365 Mass. 751, 757 (1975). In construing an earlier version of the current statute,[7] the Supreme Judicial Court stated that the "[a]bsence of bad faith or of corruption does not excuse non-compliance with the procedure established by the Legislature for the award of the contract." *Gifford* v. *Commissioner of Pub. Health,* 328 Mass. 608, 617 (1952). "Even the best of motives cannot excuse contravention of the statute." *Grande & Son, Inc.* v. *School Housing Comm. of North Reading,* 334 Mass. 252, 258 (1956). Neither the reservation of a right to reject any and all proposals in the notice to contractors nor the possibility that some violation of the statute might result in a benefit to the public warrants disobedience of the statutory mandate. *Gifford, supra,* at 616. See *Interstate Engr. Corp., supra,* at 760, n. 16.

The Supreme Judicial Court has recently discerned two fundamental, complementary legislative objectives underlying the competitive bidding statute: "First, the statute enables the public contracting authority to obtain the lowest price for its work that competition among responsible contractors can secure," and "[s]econd, the statute establishes an honest and open procedure for competition for public contracts and, in so doing, places all general contractors and subbidders on an equal footing in the competition

---

[7] G. L. c. 149, §§ 44A-44D, as amended through St. 1941, c. 699.

to gain the contract." *Interstate Engr. Corp., supra,* at 758.

The "honest and open procedure for competition" among the various bidders that is one of the fundamental objectives of the competitive bidding statute must necessarily entail fair consideration of all the submitted bids in accordance with the applicable sections of the statute. We hold that where such consideration has not been given by public contracting authorities, in violation of statutory provisions, the proper measure of recovery is the reasonable cost of preparing the bid.

Many courts have held that it is an implied condition of every invitation for bids issued by a public contracting authority that each bid submitted pursuant to the invitation will be fairly considered in accordance with all applicable statutes. See, e.g., *Heyer Prod. Co.* v. *United States,* 140 F. Supp. 409, 412-413 (Ct. Cl. 1956); *Keco Indus. Inc.* v. *United States,* 428 F. 2d 1233, 1240 (Ct. Cl. 1970); *William F. Wilke, Inc.* v. *Department of the Army,* 485 F. 2d 180, 183 (4th Cir. 1973).[8] Contra, *Rapp* v. *Salt Lake City,* 527 P. 2d 651, 654-655 (Utah 1974). Should the public contracting authority fail to give such consideration, the implied contract formed by the submission of such a bid is broken, and recovery of bid preparation costs is deemed a proper remedy. *M. Steinthal & Co.* v. *Seamans,* 455 F. 2d 1289, 1302 (D.C. Cir. 1971). *Merriam* v. *Kunzig,* 476 F. 2d 1233, 1241 (3d Cir. 1973), cert. den. sub nom. *Gateway Center Corp.* v. *Merriam,* 414 U. S. 911 (1973). *William F. Wilke, Inc.* v. *Department of the Army,* 485 F. 2d 180, 181-182 (4th Cir. 1973). *McCarty Corp.* v. *United States,*

---

[8] See generally Pierson, Standing to Seek Judicial Review of Government Contract Awards: Its Origins, Rationale and Effect on the Procurement Process, 12 B. C. Ind. & Comm. L. Rev. 1, 44-45 (1970); Comment, Government Contract Bid Protests: Judicial Review and the Role of the Court of Claims, 39 U. Chi. L. Rev. 814, 833-834 (1972); Note, Federal Contractor's Standing to Sue Before Award of Contract and Related Problems, 25 U. Fla. L. Rev. 562, 566-567 (1973); Note, Resolution of Disputes Related to the Award of Government Contracts: A Comment on the Forums and Relief Available to the Award Protestor, 42 Geo. Wash. L. Rev. 331, 362-370 (1974).

499 F. 2d 633, 637-638 (Ct. Cl. 1974) (bid preparation costs awarded). *Cincinnati Electronics Corp.* v. *Kleppe,* 509 F. 2d 1080, 1089 (6th Cir. 1975). *Armstrong & Armstrong, Inc.* v. *United States,* 356 F. Supp. 514, 521 (E.D. Wash. 1973) (bid preparation costs awarded).[9] In addition, two courts have stated that in certain cases the award of bid preparation costs alone may be inadequate. *General Elec. Co.* v. *Seamans,* 340 F. Supp. 636, 640 (D. D.C. 1972). *Ainslie Corp.* v. *Middendorf,* 381 F. Supp. 305, 307 (D. Mass. 1974). See *M. Steinthal & Co., supra,* at 1302.

The award of reasonable bid preparation costs for the failure to give fair consideration to a bidder in accordance with the statutory procedure will best effectuate the legislative objectives underlying the statute by insuring the widest competition among responsible bidders. Notwithstanding possible short-term benefit to an awarding authority in a particular case through violation of the statute, over the longer term harm to the public interest would ensue if awarding authorities are not to be held accountable for their violations. The number of bidders, and thus the range of choice available to an awarding authority, may well be reduced if it were to be assumed by prospective bidders that such an authority would not abide by the applicable statutes in making its awards. As the court stated in *Heyer Products Co.* v. *United States,* 140 F. Supp. 409, 412 (Ct. Cl. 1956), "[n]o person would have bid at all if he had known that 'the cards were stacked against him.' "[10]

---

[9] See *Swinerton & Walberg Co.* v. *City of Inglewood-Los Angeles County Civic Center Authy.* 40 Cal. App. 3d 98, 103-105 (1974), where the court approved bid preparation costs as the proper measure of damages, on a theory of promissory estoppel. But see *Universal By-Products, Inc.* v. *City of Modesto,* 43 Cal. App. 3d 145, 156-157 (1974).

See also Hiestand and Williamson, The Procurement Commission's Contract Remedies and Award Protest Recommendations: A View from the Inside, 42 Geo. Wash. L. Rev. 224, 254 (1974).

[10] See Speidel, Judicial and Administrative Review of Government Contract Awards, 37 Law & Contemp. Prob. 63, 67-68 (1972), ". . . the reciprocal dependence of the government upon the private sector of the economy must be taken into account. Both agency effectiveness and overriding Congressional policies would seem to depend, in the long

Paul Sardella Construction Co. *v.* Braintree Housing Authority.

We are not called upon in this case to determine what the measure of damages might be if an authority were to act in bad faith.

2. Sardella claims that it is entitled to damages from Findlen on the theory that Findlen was unjustly enriched to the extent of the profits it received in performing the contract with the Authority. It cites *Flavin* v. *Morrissey,* 327 Mass. 217 (1951), and *General Exch. Ins. Corp.* v. *Driscoll,* 315 Mass. 360 (1944), asserting that the latter case is "on all fours" with the present case. We fail to see any resemblance between the factual situations presented in those cases and that of the present case. Nor are we moved to strain the principles giving rise to a cause of action for unjust enrichment to cover the facts in this case. The judge found that there was no evidence that Findlen intentionally induced the Authority to rescind the award to Sardella. It appears that Findlen did nothing more than enter into the contract for which it had bid, at the amount of its bid, and as it was obliged to do under the statutory form for general bids. See G. L. c. 149, § 44F. Findlen would have forfeited all or part of its bid deposit had it not done so (G. L. c. 149, § 44B[2]), and it should not be retroactively placed in the position of having to make a choice between such a loss and determining at its peril the validity of the Authority's action in deciding that it, rather than Sardella, was the lowest bidder. We affirm the judge's ruling as to this claim.

3. Finally, Sardella claims that it is entitled to damages from Mazza because of a claimed violation of Mazza's duty

run, upon a broad base of willing and able prospective contractors. Usual business risks aside, if a pattern of award decisions exists which seem to deviate from the 'rules of the game' and there is no effective way to improve or reverse the pattern, a realistic cost-benefit analysis might induce many firms to stop or cut back competition for government business and reallocate resources to other commercial markets. Given this possibility, the loss to and of particular contractors would not necessarily be offset by the assertion that the award process works well most of the time and that occasional defects will be corrected in the next procurement." See also Note, The Private Rights of a Bidder in the Award of a Government Contract: A Step Beyond *Scanwell,* 24 Case W. Res. L. Rev. 559, 586-587 (1973).

to execute its subcontract. There was no contractual relationship, express or implied, between Sardella and Mazza which could give rise to any liability to Sardella for Mazza's failure to execute the subcontract. Had the Authority acted properly, in accordance with § 44I (3), Sardella would not have been harmed, regardless of which subcontractor had been chosen. (See part 1 of this decision.) While it was Mazza's failure to execute that initiated the dispute, it was the failure of the Authority to act in accordance with the statutory mandate that resulted in the loss to Sardella.

The reported rulings of the trial judge were correct. The case is remanded to the Superior Court for the entry of final judgments which declare that Findlen and Mazza are not liable to Sardella (Mass.R.Civ. P. 54 (b), 365 Mass. 821 [1974]) and for the determination of the Authority's liability to Sardella in accordance with the principles enunciated in this opinion.

*So ordered.*