van Gestel, Allan, J.
This matter comes before the Court on Plaintiffs Emergency Motion for Temporary Restraining Order and Preliminary Injunction. Paper #6. What is involved is an attempt to bar the Secretary of the Commonwealth (the “Secretary”) from proceeding with the performance of any contract (and contracts relating thereto) pursuant to the Elections RFR: Request for Voting System Equipped for Accessibility (the “RFR”) awarded to a company other than Diebold Election Systems, Inc. (“DESI”).
BACKGROUND
DESI’s complaint protests the procurement practices of the Secretary which led to DESI’s elimination from a competitive procurement process involving Massachusetts’s Voting Systems program. DESI claims that the Secretary acted contrary to law and regulations or arbitrarily and capriciously, without a rational basis, when he either: (a) purported to evaluate the proposals submitted by DESI and others pursuant to the Elections RFRfor “best value,” as required by the RFR and applicable law, but due to material and prejudicial errors in the evaluation failed to award the contract to the best value bidder, DESI; and/or (b) if the award was not based on best value, failed to issue a letter explaining the reasons for such an award; or (c) issued an RFR that failed to identify the relative weight of the evaluation criteria.
The RFR was issued over a year and a half ago, on July 18, 2005. It sought to procure voting systems for use by all voters, including those with disabilities. The Uniform Procurement Act, and regulations promulgated thereunder, are said to govern this RFR because it seeks to procure supplies and services that are in excess of $25,000. The RFR contemplates provision of the systems and support services to 351 local jurisdictions and approximately 1700 polling locations. It is said that the voting systems are to meet the federal requirements set forth in the Help America Vote Act of 2002 (“HAVA”), Pub. L. 107-252, Sec. 701, 42 U.S.C Sec. 15301 (2002).
The RFR requires vendors to deliver systems components, including equipment, hardware, software, and necessary components and perform required services to implement the new voting systems for the Commonwealth’s 351 municipalities.
After the Secretary received proposals, vendors presented their proposals to the Secretary. After the presentations, the Secretary determined the final vendors to participate in pilot programs. The RFR then contemplated actual field testing at polling locations across Massachusetts for evaluation purposes. After the pilot field testing, the Secretary completed his final evaluations and awarded a contract to one of the finalists.
The RFR states that the procurement was to be “best value.” The RFR did not detail the weight of various components during evaluation. The RFR merely stated that the goal was “to provide the best value ... to achieve the procurement goals of the MA SEC.”
DESI claims to provide “the most advanced, secure and accurate voting solutions in the United States, successfully deploying over 130,000 AccuVote TS and Touch Screen X (“TSX”) devices throughout the nation.” It suggests many reasons why, in its view, DESI is the best choice.
The Secretary selected DESI as one of three pilot program vendors. In November 2005, DESI provided 7 TSX units to Watertown, Massachusetts for the first pilot program. It says that during the pilot election, DESI received high marks from voters as an Americans with Disabilities Act compliant voting system. In November 2006, the Secretary requested that DESI provide 25 TSX units for a second pilot program.
Despite what DESI claims to have been a superior performance by it, and allegedly having the superior and “best value” product, the Secretary awarded the voting systems contract to Election Systems and Software, Inc. (“ES&S’j for its AutoMARK Voter Assist Terminal.
The contract was awarded to ES&S on February 20, 2007, and it has already begun installation of some of its equipment.
*302 The Secretary, through his counsel, described a very thorough and contemplative process leading to the award to ES&S. Diebold responds that working hard, although laudable, is not good enough.
At this point in time DESI concedes that it has no evidence that the Secretary acted with bad faith or bias against it or for ES&S. Further, DESI also concedes that it needs discovery to determine if the Secretary did anything wrong or was mistaken in making the award he did. In short, at this time DESI just suspects that something went wrong because it did not get the contract.
DISCUSSION
DESI’s complaint is presented in what are called two counts.
Count One seeks a declaratory judgment to the effect that the Secretary improperly awarded the voting systems contract to ES&S instead of DESI.
Count Two is not really a count at all. Rather it is merely a prayer for relief, seeking a preliminary and permanent injunction, and an award of the contract to DESI.
In order to prevail on its motion for preliminary injunctive relief, DESI bears the burden of showing: a likelihood of success on the merits; that it will suffer irreparable harm if the injunctive relief sought is not granted; and that its harm, without the injunction, outweighs any harm to the Commonwealth from the Secretary being enjoined. Boston Police Patrolmen’s Ass’n, Inc. v. Police Dept. of Boston, 446 Mass. 46, 49-50 (2006); GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
Also, this is one of those cases in which the risk of harm to the public interest must be considered. Commonwealth v. MassCRINC, 392 Mass. 79, 87 (1984); Brookline v. Goldstein, 388 Mass. 443, 447 (1983). See also Cubic Transportation Systems, Inc. v. MBTA, Suffolk Super. Ct., C.A. No. 02-5412 (BLS) (December 12, 2002).
The burden of showing likelihood of success on the merits is on DESI which seeks the injunction, not on the Secretary, who opposes it. Robinson v. Secretary of Administration, 12 Mass.App.Ct. 441, 451 (1981).
Injunctive relief either by way of a temporary restraining order or by a preliminary injunction implicates a power of equity which should be exercised delicately. It should not be exercised routinely and the Court should refuse to grant such relief unless the circumstances require it.
Nolan and Sartario, Equitable Remedies, 31 M.P.S. Sec. 139 (1993).
The Court focuses first on the issue of likelihood of success on the merits. DESI initially claimed that the Secretary violated the Uniform Procurement Act, G.L.c. 30B, by making material errors in his evaluation which led to not awarding the contract to the best value bidder, by failing to issue a letter explaining the reasons for such an award, and by issuing an RFR that failed to identify clearly the relative weight of the evaluation criteria. Any claim predicated on a violation of c. 30B here must fail, however, because c. 30B does not apply to Constitutional Officers like the Secretary. See c. 30B, Sec. 1(a) and Sec. 2. See also 801 CMR Sec. 21.01. At oral argument, DESI conceded this legal point.
Government entities and executives, like the Secretary here, may however be liable on an implied contract theory to abide by limitations imposed by his bid solicitation. The implied contract obligates the bid solicitor to follow and apply those conditions. See, e.g., New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 30-31 (1988). However, in the absence of bad faith — and none has been shown here, indeed its absence is admitted by DESI — the remedy for a breach appears to be limited to recovery of bid preparation costs. See Paul Sardella Construction Co. v. Braintree Housing Authority, 3 Mass.App.Ct. 326, 333-35 (1975).
When no underlying statute requires that a contract be awarded to the lowest responsible bidder, such a requirement is not implied, but it is to be inferred that the awarding of a contract is left to the reasonable judgment of the officer charged with responsibility therefor. Datatrol, Inc. v. State Purchasing Agent, 379 Mass. 679, 698 n.15 (1980).
It has long been the law that determinations of the sort in issue here are for the executive to make, not the Court, in the absence of some showing of illegal or arbitrary action. See, e.g., Fred C. McClean Heating Supplies, Inc. v. Westfield Trade High School Building Committee, 345 Mass. 267, 273-74 (1963). Again, DESI admits that it has no evidence of illegal or arbitrary action by the Secretary. In any event, a Court should not substitute its judgment for the judgment of the officer charged with making such discretionary decisions. Brennan v. The Governor, 405 Mass. 390, 396 (1989); Capuano v. School Building Committee of Wilbraham, 330 Mass. 494, 496 (1953).
The competitive bidding process seeks to “establish genuine and open competition after due public advertisement in the letting of contracts ... , to prevent favoritism in awarding such contracts and to secure honest methods of letting contracts in the public interest.” Datatrol, supra, 379 Mass. at 696. Thus, in the Secretary’s administration of the RFR process here, although the Secretary possessed significant discretion, that discretion should be exercised in a manner that would preserve equal footing among proposers. Larkin v. County Commissioners, 274 Mass. 437, 439 (1931); Department of Labor and Industries v. Boston Water and Sewer Commission, 18 Mass.App.Ct 621, 626 (1984).
*303 Nothing presented to the Court here by DESI enables it to determine, on the present record, that the Secretary’s procurement decision was without a rational basis or was arbitrary or capricious.
Further, as noted above, a remedy for DESI, in the absence of a showing of bad faith, is the recovery of bid preparation costs if DESI can prove a breach of the Secretary’s implied contractual obligations. E. Amanti & Sons, Inc. v. Barnstable, 42 Mass.App.Ct. 773, 778 (1997). This has been held by Massachusetts appellate courts to be an adequate remedy at law.
Further, “(w]here a Court contemplates an injunc-tive order to compel a governmental executive officer to take specific steps, it must tread cautiously in order to safeguard the separation of powers mandated by art. 30 of the Declaration of Rights of the Massachusetts Constitution.” Smith v. Commissioner of Transitional Assistance, 431 Mass. 638, 651 (2000). A Court cannot constitutionally direct the Secretary in his procurement role where such procurement involves the exercise of discretion, see Stretch v. Timilty, 309 Mass. 267, 270-71 (1941), or require the Secretary to do something that the law does not mandate. See Charrier v. Charrier, 416 Mass. 105, 110 (1993). Even a cursory examination of the RFR process here will reveal that there is an extensive degree of discretion to be exercised by the Secretary in carrying out his duties and the requirements included on the matters encompassed in the RFR, and there is nothing in the law that mandates the Secretary to do what the injunction sought would compel.
Lastly, there is the consideration of the public interest. Here, there is a distinct interest in getting satisfactory election systems in place and operating, and in having polling personnel trained, well in advance of the next major election cycle. Additionally, there are local elections scheduled in almost every town in Massachusetts in April or May and a special federal election in the Fifth Congressional District and perhaps another to replace the resigning Senate President in Massachusetts may be coming up soon.
For all of the foregoing reasons, this Court concludes that DESI has not met its burden to show a likelihood of success on the merits, irreparable harm or that the public interest will be served, rather than harmed, by the entry of preliminary injunctive relief.
ORDER
The Plaintiffs Emergency Motion for Temporary Restraining Order and Preliminary Injunction, Paper #6, is DENIED. This denial is without prejudice to refiling if by discovery or other means DESI can present some convincing evidence in its favor.