van Gestel, Allan, J.
This matter comes before the Court on Plaintiffs Emergency Motion for Injunctive Relief, Paper #4. What is involved is an attempt to enjoin the various defendants (collectively, “the DOC”) from entering into or executing a contract with the University of Massachusetts Medical School (“UMMS”) under Request for Response Number 08-9004-R21 for prison medical services (the “RFR”). The contract in issue is scheduled to be executed almost immediately and its implementation is to begin in three days, on July 1, 2007.

BACKGROUND

The parties are essentially in accord that all significant matters from the issuance of the RFR in November of 2006 up until May 9, 2007, were proper and the plaintiff, Correctional Medical Services, Inc. (“CMS”), presses no claims thereon. On May 9, 2007, the DOC Procurement Management Team (“PMT”) submitted a memorandum to Ronald Duval, then Acting Commissioner of the DOC, making recommendations regarding the awarding of an agreement for comprehensive health services to the Massachusetts prison population, RFR #08-9004-R21. By that time CMS and UMMS were the only two remaining candidates for the contract to be awarded.
On a point scoring assessment dictated by the RFR CMS and UMMS were in a virtual tie, with CMS having a bid of $315,000,000 and receiving 591 points; and UMMS having a bid of $322,000,000 and receiving 580 points. The Acting Commissioner requested the memorandum in order to obtain the benefit of the PMTs assessment of the candidates because there was a need for the Acting Commissioner to make the final determination on awarding the contract.
In its May 9, 2007, memorandum the PMT, while giving a “slight edge” to UMMS on matters relating to transition — it being the present incumbent — stated that the PMT “continues to be impressed with the proposal offered by CMS, which distinguished itself in several key areas, including program elements that are critical to the Department’s identified goals.” The memorandum ended with the PMTs recommendation of “CMS for Prison Medical Services, represent(ing) the best value for the Department.”
Somehow, not explained, and perhaps not known by either side, the UMMS got its hands on internal memoranda of the DOC reflecting the PMTs views about the differences between CMS and UMMS. Thereafter, on May 17, 2007, a letter signed by the Deputy Chancellor for Commonwealth Medicine, University of Massachusetts Medical School and the Vice Chancellor and Chief Operating Officer for Commonwealth Medicine, University of Massachusetts Medical School, was sent to Acting Commissioner Duval. Copies of the letter were sent ex parte to, among several others, Governor Patrick, Lieutenant Governor Murray and Secretary for the Executive Office of Public Safety, Burke.
The May 17, 2007, letter was a piece of advocacy elaborating on the UMMS position and was, in several instances, critical of CMS. CMS was not sent a copy of the letter. Indeed, CMS only became aware of the letter after receiving it in response to a public records request.
All parties agree that the May 17, 2007, letter was an improper ex parte intrusion into the bidding process and never should have been sent.
On May 18, 2007, Veronica Madden, Associate Commissioner, Re-entry and Re-integration, at DOC sent an e-mall to Acting Commissioner Bender, with a copy to former Acting Commissioner Duval, that reads in its entirety:
I have re-read the letter and in addition to the communication violating the procurement terms, am prepared to refute many of the letters [sic] assertions. There are numerous omissions and misrepresentations concerning the requests for funding, the non-requested staffing, and the omission that they sent a letter pulling out of serving MASAC. I met Tom Manning [Deputy Chancellor for Commonwealth Medicine, University of Massachusetts Medical School] several times, and Kathy and I met with him at least twice.
Given that the letter is inappropriate in the context of the procurement, I certainly will not respond externally, but Terre [Marshall, Director, Health Services Division] and I are working on addressing the misrepresentations contained therein. Perhaps you can convey to MaryBeth [Undersecretary], Jim, that the letter is remarkably inaccurate!
Former Acting Commissioner Duval, who held that position only from April 28, 2007 until May 18, 2007, during a brief medical leave by Acting Commissioner Bender, submitted an affidavit concerning the May 17, 2007, letter from UMMS. He recites that he immediately notified the key DOC staff involved in the procurement process “that they should not engage in any communication with any bidder outside of the official procurement process.” Consequently, the DOC made no response to UMMS, orally or in writing. He also briefed Acting Commissioner Bender on the letter upon his return.
On May 30, 2007, Acting Commissioner Bender issued a memorandum expressing several concerns about the PMTs May 9, 2007, recommendation of CMS for the contract award. The concerns expressed related to transitional issues that he felt could be avoided by keeping UMMS as the provider, and he favored UMMS’s national recognition for educational and public service programming and its connections with the Commonwealth’s community health infrastructure.
*574 On June 1, 2007, Acting Commissioner Bender wrote to CMS advising that it “was not selected for the award.” A protest letter from CMS’s counsel dated June 20, 2007, followed.
CMS’s complaint is presented in two counts.
Count I seeks a declaratory judgment to the effect that the DOC should award the prison medical services contract to CMS instead of UMMS.
Count II claims a breach of an implied contract.
In addition to the factual background recited here, the Court has reviewed all of the filings in this case and has considered all points made and proffered at the oral argument on June 28, 2007.

DISCUSSION

In order to prevail on its motion for injunctive relief, CMS bears the burden of showing: a likelihood of success on the merits; that it will suffer irreparable harm if the injunctive relief sought is not granted; and that its harm, without the injunction, outweighs any harm to the Commonwealth from the DOC being enjoined. Boston Police Patrolmen’s Ass’n, Inc. v. Police Dept. of Boston, 446 Mass. 46, 49-50 (2006); GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). Also, this is one of those cases in which the risk of harm to the public interest must be considered. Commonwealth v. MassCRINC, 392 Mass. 79, 87 (1984); Brookline v. Goldstein, 388 Mass. 443, 447 (1983). See also Diebold. Election Systems, Inc. v. William F. Galvin, Suffolk Super. Ct., C.A. No. 07-1129 BLS1 (March 27, 2007) [22 Mass. L. Rptr. 301); Cubic Transportation Systems, Inc. v. MBTA, Suffolk Super.Ct., C.A. No. 02-5412 BLS1 (December 12, 2002).
The burden of showing likelihood of success on the merits is on CMS which seeks the injunction, not on the DOC, which opposes it. Robinson v. Secretary of Administration, 12 Mass.App.Ct. 441, 451 (1981).
Injunctive relief either by way of a temporary restraining order or by a preliminary injunction implicates a power of equity which should be exercised delicately. It should not be exercised routinely and the Court should refuse to grant such relief unless the circumstances require it.
Nolan and Sartario, Equitable Remedies, 31 M.P.S. sec. 139 (1993).
The Court focuses first on the issue of likelihood of success on the merits. CMS claims that the bidding process has been impaired by the admittedly improper communication from UMMS to the DOC on May 17, 2007.
Government entities, like the DOC here, may be liable on an implied contract theory to abide by limitations imposed by its bid solicitation. The implied contract obligates the bid solicitor to follow and apply those conditions. See, e.g., New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 30-31 (1988). One of the items in the RFR here is a strict prohibition on communications between bidders and the DOC, including communications like the May 17, 2007, UMMS letter. However, in the absence of bad faith — and none has been shown yet here — the remedy for a breach appears to be limited to recovery of bid preparation costs. See Paul Sardella Construction Co. v. Braintree Housing Authority. 3 Mass.App.Ct. 326, 333-35 (1975).
When no underlying statute requires that a contract be awarded to the lowest responsible bidder, such a requirement is not implied, but it is to be inferred that the awarding of a contract is left to the reasonable judgment of the officer charged with responsibility therefor. Datatrol, Inc. v. State Purchasing Agent, 379 Mass. 679, 698 n.15 (1980).
It has long been the law that determinations of the sort in issue here are for the executive to make, not the Court, in the absence of some showing of illegal or arbitrary action. See, e.g., Fred C. McClean Heating Supplies, Inc. v. Westfield Trade High School Building Committee, 345 Mass. 267, 273-74 (1963). A Court should not substitute its judgment for the judgment of the officer charged with making such discretionary decisions. Brennan v. The Governor, 405 Mass. 390, 396 (1989); Capuano v. School Building Committee of Wilbraham 330 Mass. 494, 496 (1953).
The competitive bidding process seeks to “establish genuine and open competition after due public advertisement in the letting of contracts ... , to prevent favoritism in awarding such contracts and to secure honest methods of letting contracts in the public interest.” Datatrol, 379 Mass. at 696. Thus, in the DOC’s administration of the RFR process here, although the Acting Commissioner possessed significant discretion, that discretion should be exercised in a manner that preserves equal footing among proposers. Larkin v. County Commissioners, 274 Mass. 437, 439 (1931); Department of Labor and Industries v. Boston Water and Sewer Commission, 18 Mass.App.Ct. 621, 626 (1984).
Nothing presented to the Court here by CMS enables it to determine, on the present record, that the Acting Commissioner’s procurement decision was without a rational basis or was arbitrary or capricious.
Further, as noted above, a remedy for CMS, in the absence of a showing of bad faith, is the recovery of bid preparation costs if CMS can prove a breach of the Acting Commissioner’s implied contractual obligations. B. Amanti & Sons. Inc. v. Barnstable, 42 Mass.App.Ct. 773, 778 (1997). This has been held by Massachusetts appellate courts to be an adequate remedy at law.
Further, “[w]here a Court contemplates an injunctive order to compel a governmental department to take specific steps, it must tread cautiously in order to safeguard the separation of powers mandated by *575 art. 30 of the Declaration of Rights of the Massachusetts Constitution.” Smith v. Commissioner of Transitional Assistance, 431 Mass. 638, 651 (2000). A Court cannot constitutionally direct the Acting Commissioner in his procurement role where such procurement involves the exercise of discretion, see Stretch v. Timilty, 309 Mass. 267, 270-71 (1941), or require the Acting Commissioner to do something that the law does not mandate. See Charrier v. Charrier, 416 Mass. 105, 110 (1993). Even a cursoiy examination of the RFR process here will reveal that there is an extensive degree of discretion to be exercised by the Acting Commissioner in carrying out his duties and the requirements included on the matters encompassed in the RFR, and there is nothing in the law that mandates the Acting Commissioner to do what the injunction sought would compel.
Still further, there is the matter of whether CMS has shown “irreparable harm.” “Economic harm alone will not suffice as irreparable harm unless ‘the loss threatens the very existence of the movant’s business.’ Hull Mun. Lighting Plant v. Mass. Mun. Wholesale Elec. Co., 399 Mass. 640, 643 (1987).” Tri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 227-28 (2001). There is no showing that the failure of CMS to get the present contract will threaten the existence of its business.
As stated above, “[w]hen ... a party seeks to enjoin governmental action, the [C]ourt also considers whether the relief sought will adversely affect the public.” Tri-Nel Management, Inc., 433 Mass. at 219. See also Mass. CRINC, 392 Mass. at 447; Biotti v. Board of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988). The physical/health welfare of the Commonwealth’s more than 11,000 prison inmates is not something to be ignored.
The granting or denial of preliminary injunctive relief is a matter within the sound discretion of the Court. Tri-Nel Management, Inc., 433 Mass. at 219.
For all of the foregoing reasons, this Court concludes that CMS has not met its burden to show a likelihood of success on the merits, or irreparable harm or that the public interest will be served, rather than harmed, by the entry of preliminary injunctive relief.

ORDER

The Plaintiffs Emergency Motion for Injunctive Relief Paper #4, is DENIED. This denial is without prejudice to refiling if by discovery or other means CMS can present some convincing evidence in its favor.