E. Amanti & Sons, Inc. *vs.* Town of Barnstable.

No. 96-P-128.

Suffolk. January 14, 1997. - June 2, 1997.

Present: Brown, Kass, & Laurence, JJ.

*Public Works,* Bidding procedure. *Contract,* Public works, Bidding for contract, Subcontract.

Where a town encouraged women and minority sub-subcontractor participation in a public construction job on which it invited bids, in apparent violation of G. L. c. 149, § 44F, a subcontractor's responsive bid that included such sub-sub-bids was also in violation of the statute: in a civil action brought by the disappointed subcontractor who had been thus disqualified, in circumstances in which the statutory violation was invited by the town and the town rejected the bid because of the violation but not in bad faith, the subcontractor was entitled to recover its bid preparation costs. [776-779]

Civil action commenced in the Superior Court Department on June 7, 1993.

The case was heard by *Margot Botsford,* J., on motions for summary judgment.

*John J. Spignesi* for the plaintiff.

*James J. Myers* for the defendant.

Kass, J. As if to demonstrate that no good deed goes unpunished, the town of Barnstable encouraged women and minority subcontractor participation in a public construction job on which it invited bids and then rejected a low subcontractor's bid on the ground that the inclusion of women's participation as provided was an "addition [in the bid response] not called for." A judge of the Superior Court concluded that the subcontractor's bid violated G. L. c. 149, § 44F, that the town acted lawfully in rejecting it, and that the subcontractor was not entitled to damages. The subcontractor appealed from a judgment for the town.

These are the pertinent facts. In early 1993, Barnstable

invited written bids for the construction of a middle school. See G. L. c. 149, §§ 44A and 44B. The project involved seventeen filed subtrades. E. Amanti & Sons, Inc. (Amanti), the plaintiff, was the low bidder in the heating, air conditioning, and ventilation (HVAC) subtrade and the successful general contractor bidder, in its bid, carried Amanti's HVAC sub-bid.

Before the opening of bids, the town addressed to subcontractors a series of "addenda" to the bid invitation on the subject of participation by enterprises that women or members of a minority group controlled. Addendum No. 2,[1] issued March 12, 1993, "encouraged" filed subcontractors to subcontract portions of their work to "SOMBA[2] approved W/MBE[3] subcontractors." For that purpose, the town declared the availability of supplementary sub-bid forms and added, "The total amount subcontracted, except for any amounts properly listed in Paragraph E of the form for sub-bids, may not exceed 20% of the sub-bid price."

In the relative arcana of compulsory sub-bidding in Massachusetts, a paragraph E sub-sub-bid refers to subtrades that are identified in the specifications as ones for which the bidder shall list a sub-subcontractor unless the subcontractor customarily performs that class of work. See G. L. c. 149, § 44F(3), 4th par. For the HVAC work, the anticipated sub-sub-bids were four: sheet metal, automatic temperature controls, mechanical insulation, and testing/adjusting/balancing.

Addendum No. 3, issued two days later, on March 12, 1993, made women and minority participation mandatory, but that requirement had a short life as on March 15, 1993, an Addendum No. 4 issued, deleting the mandatory W/MBE. Addendum No. 4 added the following:

> "As stated in Item 4 of Addendum No. 2, 'Filed subcontractors are encouraged to subcontract portions

---

[1]Addendum No. 1 is not in the record, and we surmise that it dealt with an unrelated subject.

[2]The acronym stands for State Office of Minority Business Assistance and in 1987 became translated to SOMWBA, the State Office of Minority and Women's Business Assistance. See G. L. c. 23A, § 44, as appearing in St. 1987, c. 525, § 35.

[3]This acronym stands for women's/minority business enterprise.

of their work to SOMBA approved W/MBE subcontractors. Supplementary sub-bid forms are available to all filed sub-bidders to list W/MBE subcontractors with whom they will sub-contract and the dollar amount or percentage of those proposed subcontracts.' The forms referred to are those documents listed in and provided with Addendum No. 3, under Item 3."

Albeit the precatory word, "encouraged," a prospective subcontractor could be forgiven for thinking that the flurry of directives meant that the town desired W/MBE participation and would smile upon a bid that included it. A responding subcontractor could also reasonably understand that the cross reference in Addendum No. 4 to Addendum No. 2 incorporated the sentence that placed a limit of 20% on W/MBE participation through sub-subcontractors, exclusive of the designated paragraph E categories. Amanti thought so and with its low bid furnished a letter of intent — on a form furnished by the town — with McCarthy Mechanical, Inc., a SOMWBA certified women's business, that McCarthy would furnish supplementary labor and materials for the piping system for a price of $240,000. That amount constituted 16% of Amanti's bid for the HVAC work.

Barnstable and the general contractor cheerfully embraced Amanti's bid but two other sub-bidders, including the next to lowest sub-bidder, protested the award of the HVAC subcontract to Amanti to the Department of Labor and Industries (DOLI).[4] The ground of protest was that Amanti's tender of participation by McCarthy was an "addition [to the bid response] not called for." If language has any meaning, that could not literally be so. Barnstable, having "encouraged" W/MBE participation could hardly say that a positive response in that regard was "uncalled" for.

Sophisticates in the mysteries and nuances of the public bidding process are not, however, so easily misled by the ap-

---

[4]General Laws c. 149, § 44H, conferred on DOLI authority to require compliance with the public bidding laws although its decisions were not self enforcing and could only be enforced through proceedings that DOLI might initiate in Superior Court. See *Doric Bldg. Assocs.* v. *Department of Labor and Indus.*, 27 Mass. App. Ct. 1175, 1177 (1989); *Petricca Constr. Co.* v. *Commonwealth*, 37 Mass. App. Ct. 392, 394 (1994). Since an amendment made to the statute by St. 1996, c. 151, § 386, the compliance function is the duty of the Attorney General.

parently sensible. DOLI ruled that the hitch in Amanti's inclusion of W/MBE participation was that the town's inclusion of such a request violated G. L. c. 149, § 44F, that Amanti's affirmative response necessarily also violated that statute, and, for that reason, was "an addition not called for." Section 44F does not in express terms forbid a subcontractor from fulfilling its obligation to furnish specified labor and materials through the medium of sub-subcontractors, but such a prohibition has been drawn by DOLI from language in § 44F(1) that requires a "subcontractor to install all materials to be furnished by him" under the relevant specifications. There is support for reading a limitation on sub-subcontracting into § 44F in that the inclusion of an express provision for sub-subcontracting the designated "paragraph E" subtrades (described above) implies the exclusion of other sub-sub-bidding. *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Authy.,* 368 Mass. 425, 432 (1975). *Livoli* v. *Zoning Bd. of Appeals of Southborough, post* 921, 923 (1997). We have found no cases on the point, and the conclusion that a subcontractor on a public job cannot perform its obligations through subcontracted labor is not self evident from the statutory text. All the parties, however, have agreed that both the town's request for W/MBE participation and Amanti's proffer of it via McCarthy Mechanical, Inc., were a violation of § 44F. We continue our consideration of the case on that basis.

As Amanti's bid violated § 44F, Barnstable was bound to reject it unless the deviation was minor or solely matter of form. *Gil-Bern Constr. Corp.* v. *Brockton,* 353 Mass. 503, 505-506 (1968). *Modern Continental Constr. Co.* v. *Lowell,* 391 Mass. 829, 840 (1984). *J. D'Amico, Inc.* v. *Worcester,* 19 Mass. App. Ct. 112, 115 & n.5 (1984). In analyzing the significance of the deviation we concentrate on the purposes of the public bidding system and on the view of the town of the importance of the W/MBE request in its bidding process.

A first objective of the competitive bidding process prescribed by G. L. c. 149, §§ 44A-44J, is to obtain the lowest price from a responsible contractor. *Interstate Engr. Corp.* v. *Fitchburg,* 367 Mass. 751, 757 (1975). The focus of controversy, the proffer of the W/MBE participation, did not interfere with the goal of the public authority getting the best price for the HVAC work; Amanti's bid was the lowest.

Second, the bidding process is to be an open one in which all who participate do so under the same published rules. Here, the encouragement to provide W/MBE participation, by the reference to Addendum No. 2 up to 20% of the sub-bid price, was contained uniformly in the bid documents received by all competitors. The introduction by Amanti of the W/MBE proffer was not a side deal on a bid component that no other bidder knew about.[5] Contrast *Interstate Engr. Corp.* v. *Fitchburg, supra,* in which an arrangement for other work may have allowed a subcontractor to be the low bidder.

Concerning the importance of W/MBE participation, the position of the town now is that the request was entirely precatory and that Amanti should not have been so obtuse as to take it seriously, least of all by responding to the request in a manner uncompliant with § 44H. If the W/MBE proffer was just dispensable surplusage, then it must have been a minor matter of form that Amanti could dispense with, as it was ready to do. Indeed, the W/MBE proffer was not part of the bid response form furnished to bidders but was responded to with an appended letter of intent, on a form supplied by the town. We think the town cannot have it both ways: that the W/MBE request was not serious but that a response to it was so serious as to disqualify a subbidder who responded to it. This is not a question of estoppel because the courts are reluctant in the extreme to apply principles of estoppel to public bodies. *Phipps Prod. Corp.* v. *Massachusetts Bay Transp. Authy.,* 387 Mass. 687, 693 (1982). We look to the town's attitude toward the W/MBE request solely to measure whether it was an insignificant rather than a significant factor in the bidding process.

On the peculiar facts of this case, in which a statutory violation (if it was such) was invited by the public authority but subsequently disavowed as a serious request, we are of opinion that Amanti's W/MBE proffer was a minor deviation

---

[5]Amanti was not the only subcontractor on the Barnstable Middle School job to have offered M/WBE participation in work that was not paragraph E specialty subtrade work through a SOWMBA-certified subcontractor. The low and successful bidder on the electrical work, LeVangie Electric Co., Inc., subcontracted some of its work to a W/MBE subcontractor. No other bidders on the electrical work made any objection, and the town acquiesced in the letting of a subcontract to LeVangie, which proceeded to do the work. The town appeared to proceed on a "don't ask, don't tell" basis.

that Amanti should have been allowed to drop from its bid response. In all essentials, in its response to specifications and price, Amanti had submitted a conforming bid. See *Chick's Constr. Co.* v. *Wachusett Reg. High Sch. Dist. Sch. Comm.*, 343 Mass. 38, 42 (1961). Compare *Gil-Bern Constr. Corp.* v. *Brockton*, 353 Mass. at 506-507 (failure to include a critical path method [a nonstatutory requirement] was a minor deviation) and *Chick's Constr. Co.* v. *Wachusett Reg. High Sch. Dist. Sch. Commn.*, *supra* at 40-43 (failure to make an entry on one item in the statutory bid form was a minor deviation) with *Modern Continental Constr. Co.* v. *Lowell*, 391 Mass. at 840 (failure in bidder prequalification a substantial deviation) and *J. D'Amico, Inc.* v. *Worcester*, 19 Mass. App. Ct. at 115 (wrong bid deposit a substantial deviation).

We do not think it a satisfactory response to our reasoning that Amanti could have responded to the W/MBE request in the specialized paragraph E subtrades. The bid invitation, perhaps in recognition of the difficulty of achieving significant W/MBE participation if confined to the specialized subtrades, had invited W/MBE participation outside of the specialized subtrades.

There remains the question of remedy. Amanti failed in its effort to obtain injunctive relief, and the HVAC work was done by the second lowest bidder. In such circumstances the damages which Amanti may recover are limited to its bid preparation costs. *Paul Sardella Constr. Co.* v. *Braintree Hous. Authy.*, 3 Mass. App. Ct. 326, 333-335 (1975), *S.C.*, 371 Mass. 235, 243 (1976). *Sciaba Constr. Corp.* v. *Boston*, 35 Mass. App. Ct. 181, 191 (1993).

In circumstances involving failure by a public authority to consider bids fairly and in good faith, this court has suggested that lost profits may be recoverable, as they are when a general contractor, in a public bidding setting, in bad faith deprives a sub-bidder of its contract. *Bradford & Bigelow, Inc.* v. *Commonwealth*, 24 Mass. App. Ct. 349, 358-359 (1987). Amanti suggests Barnstable acted unfairly by including an unlawful requirement that it should have known, on the basis of experience in a bidding contest in 1989, was unlawful. At most, however, the conduct of Barnstable exhibited confusion about how to ride the W/MBE horse. There was no bad faith directed at Amanti or any other bidder. The occasion recalls the observation of Justice Holmes

that a dog knows the difference between being stumbled over and being kicked. Holmes, The Common Law 3 (1881). Amanti was stumbled over.

More than twelve years ago, in *JJ Assocs., Inc.* v. *Fall River Hous. Authy.*, 19 Mass. App. Ct. 45, 53 (1984), we remarked about the conflict between the objectives of the public bidding laws and those affording special opportunities for W/MBE participation in public construction contracts. We said that "The area appears to be one where the risk of confusion would be reduced greatly by a more complete and explicit expression of legislative intention." That risk of confusion, as the instant case illustrates, persists. Equally unfortunate is that the demands of § 44F, as interpreted by DOLI, convert the program to encourage W/MBE participation in public construction into a masquerade, with resultant cynicism about the purpose and carrying out of the policies described in G. L. 23A, §§ 41 to 44.

The judgment declaring that Barnstable rightly rejected Amanti's bid is reversed, and a judgment shall be entered declaring that Amanti is entitled to recover its bid preparation costs.

*So ordered.*