Burnes, J.
This action arises out of a public construction project which the Town of Wakefield (“Wake-field”) awarded to the defendant, Thyssen Elevator (New England), Inc. (“Thyssen”), the second-lowest sub-bidder, rather than to the plaintiff, Atlas Elevator Service (“Atlas”), the lowest sub-bidder. Atlas brings this action against Thyssen and its employee, John E. Helm (“Helm”), for libel (Counts I and VI), negligence (Counts II and VII), interference with contractual and advantageous relations (Counts in, IV, VIII and IX), negligent misrepresentation (Counts V and X) and violations of G.L.c. 93A (Count XI). Atlas now moves for summary judgment on liability on the ground that Thyssen made false and defamatory statements in a letter to Wakefield protesting the qualifications of Atlas. Thyssen and Helm respond that Atlas cannot establish the essential elements of its cause of actions and that Atlas misstates that Wakefield relied upon Thyssen’s protest letter in denying Atlas's sub-bid. Thyssen and Helm also move for summary judgment on all counts on the ground that Atlas has no reasonable expectation of establishing the essential elements of its stated claims. For the reasons discussed below, Atlas’s motion for summary judgment is DENIED, and the defendants’ cross-motion for summary judgment is ALLOWED.
BACKGROUND
The undisputed material facts as established by the summary judgment record are as follows:
B&A Elevator, Co. (“B&A Elevator”) is a Massachusetts corporation incorporated in 1941. Edmund J. Becker, his wife, Margaret G. Becker, and Elmer M. Anderson were the directors of B&A Elevator. In 1980, B&A Elevator involuntarily dissolved.
Atlas Elevator Co., Inc., is a Massachusetts corporation incorporated on August 10, 1972 and solely owned by Reinhardt Becker (“Becker”), Edmund Becker’s son. On December 3, 1980, Atlas Elevator Co., Inc. filed for bankruptcy.
Atlas Elevator Company, Inc. is a Massachusetts corporation incorporated on August 5, 1987 and is also solely owned by Becker. On September 22, 1993, Atlas Elevator Company, Inc. filed for bankruptcy. Both Atlas Elevator Co., Inc. and Atlas Elevator Company, Inc. have been involved in Chapter 7 bankruptcy liquidation since 1992.
Atlas Elevator Corporation is a Massachusetts corporation, incorporated on December 10, 1991 and owned by Janet Moore, the sole shareholder. Moore also was a long-time employee of Atlas Elevator Company and lived at the same address as Becker. On August 12, 1994, Atlas Elevator Corporation filed for bankruptcy.
The plaintiff, Atlas, is a Massachusetts corporation which is in the business of elevator design, supply, installation and maintenance. Atlas was incorporated in the Commonwealth of Massachusetts on August 4, 1998. Becker is the sole shareholder, officer and director of Atlas. The defendant, Thyssen, is also in the business of elevator design, supply, installation and maintenance. Elevator contractors, like Atlas and Thy-ssen, are highly specialized subcontractors, and there are a limited number who perform substantial elevator installations in commercial, industrial and public buildings in the market in Massachusetts.
In September 1998, the Town of Wakefield (“Wake-field”) solicited public bids for elevator construction work at Wakefield’s Lee Memorial Town Hall. On October 1, 1998, Atlas submitted an elevator construction sub-bid. Atlas was the lowest elevator sub-bidder with a bid of $69,700.00. The second-lowest bid was submitted by Thyssen with a sub-bid of $72,200.00. On October 5, 1998, Kang Associates, Inc. (“Kang”), the architect for Wakefield, published, by letter, the results of the bidding.
On October 6, 1998, prior to the contract award, Helm on behalf of Thyssen, and the third elevator sub-bidder, Beckwith, each submitted a letter to Wakefield to protest Atlas’s sub-bid on the ground that Atlas was not a qualified elevator contractor. The submission of a bid protest letter was a common *473 practice in the construction industry whereby companies, who were not selected as the lowest sub-bidder, submit protest letter in an attempt to have the selected sub-bidder disqualified. Thyssen’s protest letter stated, in part:
We respectfully ask your consideration for disqualifying the apparently low filed sub-bidder, Atlas Elevator, based on the following:
1. Atlas Elevator has been in business for less than (2) months at bid time — Incorporated on 8/4/98.
2. Atlas Elevator has been involved in bankruptcy proceedings on three separate occasions — Atlas Elevator Co., Atlas Elevator Service Co., and B&A Elevator Co.
3. Atlas Elevator has, under the failed companies, not completed two (2) jobs that Thyssen was contracted to complete: (1) Malden Public Library, Mal-den, Massachusetts, and (2) Bob’s Stores, Saugus, Massachusetts.
4. The Atlas Elevator jobs referenced have not started with the sub-contracted portion of the work.
5. Atlas Elevator, as of two (2) weeks ago, has filed organizational papers with the International Union of Elevator Constructions — Boston Local #4. This organization provides labor for the industry.
As a result of Thyssen’s and Beckwith’s protest letters, Wakefield investigated Atlas’s qualifications. Wakefield’s project architect, Kang, discovered that Atlas had not completed the elevator installations on either project listed in its sub-bid. The investigation also produced additional information indicating that Becker’s prior companies, also named Atlas, hadfailed to complete several other projects. Wakefield subsequently rejected Atlas’s sub-bid for the Lee Memorial Town Hall elevator construction project and awarded the elevator sub-bid to Thyssen. Wakefield asserts that it rejected Atlas’s sub-bid based on Atlas’s lack of completed projects.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. See Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of triable issues and that the summary judgment record entitles the moving party to judgment as a matter of law. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion may respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17.
Atlas contends that Thyssen, in its bid protest letter, provided Wakefield with information that it knew to be false. Specifically, Atlas claims that two of Thyssen’s statements were blatantly false and defamatory. First, Atlas asserts that it is a separate legal entity from Atlas Elevator Co., Inc., Atlas Elevator Corporation and B&A Elevator; and, therefore, any prior bankruptcy proceedings have no impact on Atlas. As such, Atlas contends that Thyssen’s claim that Atlas was involved in three previous bankruptcy proceedings is false. Second, Atlas asserts that it is not associated with the ownership of any of the companies mentioned in Thyssen’s protest letter; and, therefore, any uncompleted projects did not reflect Atlas’s ability to complete a project. Thus, Atlas claims that Thyssen’s assertion that Atlas had not completed several prior jobs is also false. In sum, Atlas argues that Thyssen should be held per se liable since the statements in Thyssen’s bid protest letter are accusations defaming its business reputation.
Thyssen, in its opposition and its cross-motion, contests Atlas’s claims on two grounds. Thyssen claims that Atlas cannot establish the essential elements of each of its stated cause of actions. Thyssen also claims that Atlas’s allegations are predicated on the misstatement that Wakefield relied upon Thyssen’s bid protest letter in rejecting Atlas’s sub-bid. Rather, Thyssen submits that there is unequivocal evidence that Wakefield conducted its own investigation after receipt of the protest letters and came to an independent conclusion that Atlas was not a qualified sub-bidder for the elevator construction project.
I. Libel (Counts I and VI)[2]
Summary judgment procedures are highly favored in defamation cases so as to prevent the chill of freedom of expression. King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987), cert. denied, 485 U.S. 940 (1988); Appleby v. Daily Hampshire Gazette, 395 Mass. 32, 37 (1985). In that regard, the Supreme Judicial Court (“SJC”) has stated that “[a]llowing a trial to take place in a meritless case ‘would put an unjustified and serious damper on freedom of expression ...’ Even if a defendant in a libel case is ultimately successful at trial, the costs of litigation may induce an unnecessary and undesirable self-censorship.” Appleby, 395 Mass. at 37, quoting National Ass’n of Gov’t Employees, Inc. v. Central Broadcasting Corp., 379 Mass. 220, 233 (1979); King, 400 Mass. at 708.
The circumstances of this case reveal that summary judgment of Atlas’s defamation claims is feasible *474 on two grounds. First, the statements on which Atlas’s claims are based were contained in a bid-protest letter, which is conditionally privileged; and, therefore, the statements are not actionable. Second, even if those statements made in the letter are actionable, as a limited public figure, Atlas bears the burden of proving “actual malice,” and cannot reasonably expect to do so.
A. Conditional Privilege
Massachusetts courts have recognized that a conditional privilege is afforded to a broad range of communications where “the publisher and recipient share some legitimate public interest reasonably calculated to be served by the communication.” Bratt v. Int’l Business Machines, Corp., 392 Mass. 508, 512-13 (1984); see also Sheehan v. Tobin, 326 Mass. 185, 190-91 (1950). Here, Thyssen’s bid protest letter served a legitimate public interest because it brought to Wakefield’s attention information concerning the qualifications of a bidder for public work.
General Laws c. 149, §§44A-44H, provide comprehensive and detailed requirements for public agencies that award building contracts costing more than $25,000. G.L.c. 149, §44A(2). Section 44A(2) provides that contracts “shall be awarded to the lowest responsible and eligible general bidder on the basis of competitive bids.” Section 44A(1) defines “responsible” as “demonstrably possessing the skill, ability and integrity necessary to faithfully perform the work called for by a particular contract, based upon a determination of competent workmanship and financial soundness.” G.L.c. 149, §44A(1). To be “(e)ligible,” a bidder must meet certain statutory requirements and “certify that he is able to furnish labor that can work in harmony with all other elements of labor employed or to be employed on the work.” Id. Recently, the SJC has construed the legislative objectives of the competitive bidding statute, stating that, “(t]he purpose of the competitive bidding statute is transparent: ‘to ensure that the awarding authority obtain the lowest price among responsible contractors’ and ‘to establish an open and honest procedure for competition for public contracts.’ ” John T. Callahan & Sons, Inc. v. Malden, 430 Mass. 124, 128 (1999).
The public has a keen interest in avoiding the award of a public contract to an unqualified sub-bidder. Thyssen had a legal right to challenge Atlas’s sub-bid in connection with Wakefield’s competitive bidding process. See, e.g., Boston Harbor Commuter Service, Inc. v. Massachusetts Bay Transp. Auth., 46 Mass.App.Ct. 122 (1999) (sub-contractor losing contract on public project may challenge bid award to another by submitting a protest to the public agency); E. Amanti & Sons, Inc. v. Barnstable, 42 Mass.App.Ct. 773 (1997). To restrict the free flow of communication would impede in a bidding process that is to be open and honest, put bidders on equal footing and yield the lowest possible price among responsible contractors. As such, this court finds that Thyssen’s bid protest letter was conditionally privileged because it furthered these public objectives. See Catrone v. Thoroughbred Racing Assoc., 929 F.2d 881, 887 (1st Cir. 1991). Therefore, Atlas cannot recover without proof of actual malice, Tosti v. Ayik, 386 Mas. 721, 726 (1982), or unless there is “unnecessary, unreasonable or excessive publication, and [Atlas] establishes that [Thyssen] published the defamatory statements recklessly.” Mulgrew v. Taunton, 410 Mass. 631, 634 (1991), quoting Bratt, 392 Mass. at 509. The court finds that there is no evidence of malice, see discussion below, or excessive publication.[3]
B. Limited Public Figure
“An individual may achieve public figure status if he ‘voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.’ ” ELM Laboratory, Inc. v. RKO General, Inc., 403 Mass. 779, 785 (1989). In ELM Laboratory, the SJC defined “public controversy” as “a dispute in which the outcome ‘affects the general public or some segment of it in an appreciable way.’ ” Id. at 786. Here, Atlas voluntarily participated in a public bid process prescribed by G.L.c. 149 §44F. As stated previously, the purpose of the competitive public bidding statute is to establish an open and honest procedure for competition for public contracts. John T. Callahan & Sons, Inc., 430 Mass. at 128; Modern Continental Construction Co. v. Lowell, 391 Mass. 829, 840 (1984); James J. Welch & Co. v. Deputy Comm’r of Capital Planning and Operations, 387 Mass. 662, 666 (1982). Atlas participated in this process and became a limited public figure when a controversy arose out of that project. See Continental Cablevision v. Storer, 653 F.Sup. 451, 460 (D.Mass. 1981) (holding that, by seeking award of public cable license in a locality, plaintiff became a limited public figure when a controversy arose over that award); Nicholson v. Promoters, 159 F.R.D. 343, 344-45 (D.Mass. 1994) (independent contractor hired to manage a public auditorium was a limited purpose public figure).
To recover under libel or slander, as a public official, Atlas must prove “actual malice.” Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 867 (1975). “Actual malice ... is proved by a showing that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false.” Id., citing New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). In light of the First Amendment considerations, a limited public figure must prove actual malice by “clear and convincing evidence,” a standard that requires the proof be “strong, positive and free from doubt” or “full, clear and decisive.” Id. at 270-71.
Here, Thyssen has shown that Atlas cannot reasonably prove that the alleged libelous statements were made with actual malice. Atlas claims that Thyssen *475 made the statements out of its own self interest. Such an allegation, without further proof, does not create a factual issue as to whether Thyssen uttered the subject statements with knowledge, or in reckless disregard, of their alleged falsity. Moreover, Thyssen’s alleged defamatory comments can not be characterized as being made recklessly because the evidence indicates that Helm attempted to convey the facts which he reasonably believed to be true, Hartmann v. Boston Herald-Traveler Corp., 323 Mass. 56 (1948) (forceful criticism based on a “firm belief’ that plaintiff was harmful to country does not demonstrate “improper motive”), and did so for a legitimate purpose to a limited audience. Catrone, 929 F.2d at 890. Atlas offers no evidence to the contrary. Atlas, therefore, cannot reasonably expect to prove actual malice. Id. (finding that even assuming defendant’s harbored ill will, plaintiff must establish that communications were motivated by “actual malice”). Summary judgment in favor of the defendants is appropriate.
I. Negligence (Counts II and VII)
In order to establish a claim of negligence, Atlas must show that it suffered personal injury or property damage. When there are no suggestions of personal injury or property damage, there can be no recovery for negligence as a matter of law. Marcil v. John Deere, 9 Mass.App.Ct. 625, 630 (1980) (in the absence of personal injury or physical damage to property, a defendant is not ordinarily liable in tort for negligence). Here, Atlas claims loss of business, not personal injury or property damage as a result of Thyssen’s bid protest letter. Counts II and VII must be dismissed as a matter of law.
III. Interference with Contractual and Advantageous Relations (Counts m, IV, VIII and IX)
In order to establish a claim for interference with contractual and advantageous relations, Atlas must prove that (1) it had a business relationship or contemplated contract for economic benefit with Wake-field; (2) Thyssen knowingly induced Wakefield to break that contract; (3) Thyssen’s interference was improper in motive or means; and (4) Atlas was harmed by the interference. See Adcom Products, Inc. v. Konica Business Machines USA, Inc., 41 Mass.App.Ct. 101 (1996).
Here, Atlas has not demonstrated that there was an existing contract or advantageous business relationship between it and Wakefield. Rather, the evidence suggests that Wakefield rejected Atlas’s sub-bid prior to the creation of a formal business relationship or contract. In this circumstance, Atlas has no legal basis to claim interference with contractual relations. See G.S. Enterprises v. Falmouth Marine, 410 Mass. 262, 272 (1991).
Further, as stated previously, Thyssen’s communications are conditionally privileged because the bid protest letter was written to further the public objectives of establishing an open and honest public bidding process. See Gram v. Liberty Mutual Ins. Co., 384 Mass. 659 (1981) (the conditional privilege advanced in a claim of libel likewise protects the publisher from claims for intentional interference in advantageous business relations). In order to defeat a claim of conditional privilege, Atlas must establish that Thyssen’s communications were written with ill motive. Mulgrew, 410 Mass. at 634.
Although there need not be evidence that it was written maliciously, there must be proof beyond that of intentional interference. That is, improper conduct must be established. See United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816-17 (1990) (court abandons requirement of proof of malicious conduct, but plaintiff must establish that defendant’s act had an improper motive or constituted an improper means). Thus, a claim of tort liability for intentional interference with contractual or other economic relations is made out when “interference resulting in injury to another is wrongful by some measure beyond the fact of interference itself.” United Truck Leasing Corp., 406 Mass. at 816. There is no evidence that Thyssen used threats, nor does the evidence support a claim that Thyssen defamed anyone or used an other improper means in relation to Atlas’s prospective contract with Wakefield. Thyssen’s apparent motive was to bring to Wakefield’s attention the fact that an unqualified bidder was making a low bid on a public contract. There is no evidence to support a finding that its real motive in writing the letter was to injure Atlas.
Moreover, Atlas cannot establish that Thyssen’s bid protest letter was the causal factor in prompting Wake-field to decide to award the bid to another sub-contractor. The evidence indicates that Wakefield conducted its own investigation that confirmed that several companies previously owned by Becker, all bearing the name Atlas, had not completed several previous projects. Atlas, therefore, is unable to prove the essential elements of its interference with contractual and advantageous relations claims against Thy-ssen and Helm, and such claims must be dismissed.
V. Negligent Misrepresentation (Counts V and X)
“In order to recover for negligent misrepresentation, the plaintiff must show that the defendant (1) in the course of its business, (2) supplied false information for the guidance of others, (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others, (5) by their justifiable reliance upon the information, and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information.” Golber v. BayBank Valley Trust Co., 46 Mass.App.Ct. 256 (1999); see also Restatement (Second) of Torts §552 (1977). “Honesty requires only that the maker of a representation speak in good faith and without consciousness or a lack of any basis for *476 belief in the truth or accuracy of what he says.” Fox v. F&J Gattozzi, Corp., 41 Mass.App.Ct. 581, 587 (1996).
This simply is not Atlas’s claim to make. The representation was made to Wakefield; if anyone relied upon it, Wakefield did (although Wakefield apparently did make its decision based on its investigation). Lastly, even if this were Atlas’s claim, there is no evidence that the information was false, except perhaps in the most technical and insubstantial way. As such, Atlas has no basis in law to recover for the tort of negligent misrepresentation.
VI. Violation of G.L.c. 93A (Counts XI)
Atlas also alleges that the defendants committed unfair and deceptive trade practices when they submitted the protest letter to Wakefield. The short answer is that there is no reason to conclude that defamation, even if proved, constitutes an “unfair or deceptive act” within the scope of G.L.c. 93A, where the statements allegedly constituting defamation were made in the context of a public bidding process. Where, as here, defamatory statements do not support a cause of action for libel, they also do not support a cause of action under c. 93A. Dulgarian v. Stone, 420 Mass. 843, 852-53 (1995); see also AMF Corp. v. Corporate Aircraft, 626 F.Sup. 1533, 1551-52 (D.Mass. 1985) (where defendants did not exceed their qualified privilege they did not engage in any unfair or deceptive trade practice in violation of c. 93A).
ORDER
For the foregoing reasons, it is hereby ORDERED that Atlas’s motion for summary judgment is DENIED, and the defendant’s cross-motion for summary judgment is ALLOWED.

Atias brings Count I against Thyssen for libel and Count VI against Helm for libel. Both counts involve identical facts.

Here, the letter was addressed and sent directly to Wake-field for the sole purpose of protesting Atlas' qualifications. As such, there is neither evidence of excessive publication, nor evidence that Thyssen published the statements recklessly.